**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.: 14-CV-3422

BROADMOOR HOTEL, INC.,

    Plaintiff,

v.

J. CREW GROUP, INC. and
J. CREW INTERNATIONAL, INC.,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Broadmoor Hotel, Inc. ("Plaintiff" or "Broadmoor"), by and through its undersigned counsel, for its Complaint against Defendants J. Crew Group, Inc. ("J. Crew Group") and J. Crew International, Inc. ("J. Crew Int'l," and together with J. Crew Group, "J. Crew" or "Defendants"), alleges as follows:

**INTRODUCTION**

1.    This is an action for federal trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as common law trademark infringement, common law unfair competition, and deceptive trade practices under Colorado state law.

## PARTIES

2. Broadmoor is a corporation formed under the laws of the State of Colorado on December 3, 1932 with a principal place of business at One Lake Avenue, Colorado Springs, Colorado, 80906.

3. On information and belief, J. Crew Group is a corporation formed under the laws of the State of Delaware with a principal place of business at 770 Broadway, New York, New York, 10003.

4. On information and belief, J. Crew Int'l is a corporation formed under the laws of the State of Delaware with a principal place of business at 770 Broadway, New York, New York, 10003.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338, 1367.

6. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because Broadmoor is a citizen of a different state than both Defendants and the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants in this action because, upon information and belief, Defendants transact substantial business in Colorado directly through at least six retail outlets and by offering and selling products by catalog and over the Internet in Colorado through their website at www.jcrew.com.

Defendants have also derived direct financial benefit from the unlawful activities alleged in this Complaint within this jurisdiction.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) & (c).

## GENERAL ALLEGATIONS

9. Broadmoor and its predecessors have been in the business of providing hotel and related services since the opening of the Broadmoor hotel and resort ("The Broadmoor") in Colorado Springs in 1918.

10. Broadmoor is the longest-running consecutive winner of both a Five Diamond rating from AAA and a Five Star rating from Forbes Travel Guide. Broadmoor operates the only restaurant in Colorado rated Five Diamond by AAA and Five Star by Forbes Travel Guide.

11. In connection with its outdoor-oriented facilities, services, and amenities, Broadmoor has for decades sold (and continues to sell) apparel and other merchandise at Broadmoor facilities and through Broadmoor's website.

12. Broadmoor apparel is often oriented toward outdoor activities, with which Broadmoor has been associated for decades.

13. In addition to hotel services and providing facilities for events, Broadmoor offers its guests an experience comprising a wide variety of outdoor activities at the foot of the Colorado Rocky Mountains.

14. Broadmoor's outdoor services include rental of horses, arranging and conducting tours and excursions for fishing, hot air ballooning, rock climbing, and white

3

water rafting, providing horseback riding facilities for recreational purposes, and providing horse stable facilities.

15. Outdoor activities have always been an important part of Broadmoor's image. For example:

    a. from the 1920s through approximately the 1970s, The Broadmoor Riding Arena and Penrose Stadium, both of which were located on The Broadmoor's premises, hosted rodeos and related events;

    b. from the 1930s through approximately 1994, Broadmoor owned The Broadmoor World Arena, a skating rink and hockey arena located on The Broadmoor's premises, where numerous sporting events were hosted, including, among others, collegiate and international hockey championships and world figure skating championships; and

    c. from the 1950s through approximately 1991, Broadmoor owned Ski Broadmoor, a small ski resort that was located just a few miles from The Broadmoor, and to and from which Broadmoor offered hotel guests a free shuttle service.

16. Today, Broadmoor continues its emphasis on and association with outdoor services and facilities as evidenced by, for example, the following:

    a. The Ranch at Emerald Valley is a rustic, all-inclusive enclave located eight miles from The Broadmoor. In addition to rustic accommodations and dining, the Ranch at Emerald Valley offers outdoor activities, including fly-fishing, hiking, and horseback riding.

   b. Cloud Camp, which sits atop Cheyenne Mountain, has a secluded mountain lodge and cabins accessible only by foot or by four-wheel-drive vehicle. In addition to dining and accommodations, Cloud Camp offers unparalleled access to remote hiking trails, along with guided hikes and other outdoor activities.

   c. Seven Falls, a series of waterfalls in Cheyenne Canyon, which has been a tourist attraction since the 1880s was recently acquired and is being integrated into Broadmoor's portfolio of outdoor facilities.

**The Broadmoor Marks**

17. Broadmoor or its predecessors have consistently used the mark THE BROADMOOR in commerce since 1918 in connection with resort, the hotel services, and the intangible experience offered to guests.

18. Broadmoor has registered THE BROADMOOR on the Principal Register for country club services; providing recreational facilities; entertainment services, including film and live entertainment featuring music, comedy, and sports; hotel services; restaurant services; and retail store services offering jewelry and flowers. *See* Exhibit 1.

19. Broadmoor's registration of THE BROADMOOR has become incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

20. Broadmoor has also registered THE BROADMOOR in Colorado pursuant to C.R.S. § 7-70-102.

21.     Broadmoor has consistently used the mark THE BROADMOOR COLORADO SPRINGS in commerce since 2004 in connection with its clothing, its other products and services, and the intangible experience that it offers guests.

22.     Broadmoor has registered THE BROADMOOR COLORADO SPRINGS on the Principal Register for retail store services offering clothing, among other things. *See* Exhibit 2. Together the marks covered by the registrations for THE BROADMOOR and THE BROADMOOR COLORADO SPRINGS are referred to as "Broadmoor's Registered Marks".

23.     U.S. Registration No. 4,431,154 for THE BROADMOOR COLORADO SPRINGS and U.S. Registration No. 1,700,883 for THE BROADMOOOR constitute prima facie and conclusive evidence, respectively, of: (a) the validity of the registration for the mark; (b) Broadmoor's ownership of the mark; and (c) Broadmoor's exclusive right to use the mark in commerce in connection with the services specified in each registration. 15 U.S.C. §§ 1057(b), 1115(a) & (b).

24.     Broadmoor has applied to register THE BROADMOOR on the Principal Register as a mark to identify clothing, namely shirts, jackets, t-shirts, sweatshirts, hats, visors, and one-piece garments for children. This application has been approved for publication. *See* Exhibit 3.

25.     Broadmoor has consistently used its mark THE BROADMOOR in connection with clothing at least since 1980, as stated in Broadmoor's application to register THE BROADMOOR mark.

\\DE - 019341/000001 - 756560 v12

26. Indeed, on information and belief, Broadmoor's (and its predecessors') use of its marks BROADMOOR and/or THE BROADMOOR in connection with clothing extends back much earlier than 1980. Broadmoor has reason to believe that such use goes back to the opening of the Broadmoor hotel and resort in 1918. *See, e.g.*, Exhibits 4 & 5 (showing historic use of the mark on clothing and in clothing advertisements).

27. Broadmoor has used its mark THE BROADMOOR COLLECTION in connection with clothing and other related goods since at least 2001. *See* Exhibit 6.

28. Consumers recognize THE BROADMOOR, THE BROADMOOR COLORADO SPRINGS, and THE BROADMOOR COLLECTION marks ("The Broadmoor Marks") as unmistakable connections between the Broadmoor and its well-crafted identity and the reliable quality of products and services consumers can expect from Broadmoor.

29. Broadmoor has built a substantial reputation and level of goodwill in the marketplace and has expended considerable time and resources in promoting its clothing.

30. The Broadmoor Marks have become synonymous with clothing and retail services, as well as recreational activities and luxury travel in the minds of the public.

31. Broadmoor's core resort services and outdoor-related identity are closely related and complementary to clothing.

32. Broadmoor owns common law and statutory trademark rights in The Broadmoor Marks by virtue of (a) Broadmoor's longstanding use of those marks in

7

commerce in connection with its services and clothing, and (b) the significance and meaning that consumers associate with The Broadmoor Marks.

### J. Crew's Unlawful Actions

33. J. Crew has used and continues to use the word "Broadmoor" to identify a collection of men's outerwear.

34. In a section entitled "The Outerwear Guide," J. Crew's website features "THE BROADMOOR QUILTED JACKET IN JAPANESE CHAMBRAY" as representative of its quilted jackets and explains: "The British royal family is credited with popularizing the quilted jacket in the 1960s when they adopted the style for horseback riding. For commoners, it works just as well as an extra layer for keeping out damp and blustery weather while riding your fixed-speed bike." *See* Exhibit 7 at 4.

35. On the same webpage, J. Crew features "THE BROADMOOR QUILTED VEST" as representative of its vests.

36. The Outerwear Guide webpage contains hyperlinks that allow a consumer to browse to the collection of quilted jackets or vests. *See* Exhibits 8 and 9.

37. J. Crew has publicized this collection of men's wear as "The Broadmoor Collection." *See* Exhibit 10.

38. Recently-performed Google searches for "broadmoor clothing" yielded results for Broadmoor and associated shops *below* sponsored links to "Broadmoor" branded J. Crew jackets. *See* Exhibit 11.

### J. Crew's Brand Partnership Offerings

39. Through its "In Good Company" brand partnerships, J. Crew sells a variety of goods, which, on information and belief, are licensed from third parties.

40. Through its "In Good Company" program, J. Crew directly offers products from third parties, including Ray-Ban, Red Wing Shoes, and Barbour.

41. On information and belief, J. Crew's "In Good Company" program involves licensing agreements between J. Crew and those third-parties.

42. Given J. Crew's apparent practice of licensing partnerships, evidenced by its "In Good Company" program, consumers are likely to be confused by J. Crew's use of The Broadmoor Marks at least because they assume that there is a co-branding relationship between J. Crew and Broadmoor.

43. J. Crew's continued use of The Broadmoor Marks in connection with quilted jackets and vests has caused and, unless restrained and enjoined, will continue to cause confusion among consumers as to the source and sponsorship of J. Crew's products.

### Letter to J. Crew and J. Crew's Response

44. On August 29, 2014, Broadmoor sent a letter to J. Crew Int'l notifying J. Crew Int'l of its infringement and requesting that J. Crew discontinue use of the mark "Broadmoor" and any other confusingly similar marks. *See* Exhibit 12.

45. After sending the notification letter, counsel for Broadmoor followed up with J. Crew on September 16th and J. Crew's counsel on September 25th before receiving a substantive response.

46.     In its response dated September 29, 2014, J. Crew denied its infringement and refused to cease use of The Broadmoor Marks. *See* Exhibit 13.

47.     After thorough investigation, Broadmoor now brings this action for injunctive relief and damages to prevent J. Crew from deceiving and confusing consumers and from injuring Broadmoor's goodwill and reputation.

## COUNT I:
## TRADEMARK INFRINGEMENT
## IN VIOLATION OF LANHAM ACT SECTION 32 (15 U.S.C. § 1114)

48.     Broadmoor incorporates the allegations in paragraphs 1 through 47 into Count I.

49.     Broadmoor's Registered Marks are valid federally registered marks owned by Broadmoor and widely used in interstate commerce.

50.     J. Crew is using a "Broadmoor" designation that is a reproduction, counterfeit, copy, and/or colorable imitation of Broadmoor's Registered Marks in connection with the sale, offering for sale, distribution, and advertising of its quilted jackets and vests.

51.     J. Crew's acts have caused and continue to cause a likelihood of confusion with consumers because J. Crew's acts are likely to cause consumers to believe, mistakenly and erroneously, that Broadmoor is the source of J. Crew's quilted jackets and vests or that such items are affiliated with, connected to, or sponsored by, Broadmoor in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

52. Despite J. Crew's actual knowledge of Broadmoor's Registered Marks, J. Crew has refused to stop using a reproduction, counterfeit, copy, and/or colorable imitation of Broadmoor's Registered Marks. Absent intervention by this Court, J. Crew will continue unlawfully to employ a reproduction, counterfeit, copy, and/or colorable imitation of Broadmoor's Registered Marks.

53. J. Crew's unlawful acts have caused and will continue to cause irreparable injury to Broadmoor for which Broadmoor has no adequate remedy at law.

## COUNT II:
## UNFAIR COMPETITION
## IN VIOLATION OF LANHAM ACT SECTION 43(a) (15 U.S.C. § 1125(a))

54. Broadmoor incorporates the allegations in paragraphs 1 through 53 into Count II.

55. Broadmoor owns trademark rights in The Broadmoor Marks in connection with Broadmoor's well-crafted identity, its services and products (including clothing), and the reliable quality of those services and products.

56. J. Crew's use of the designation "Broadmoor" in connection with its quilted jackets and vests is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of J. Crew with Broadmoor, and as to the origin, sponsorship, or approval of J. Crew's quilted jackets and vests within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

57. Despite J. Crew's actual knowledge of The Broadmoor Marks, J. Crew has refused to stop using the designation "Broadmoor" in connection with its quilted jackets

and vests and, absent intervention by this Court, J. Crew will continue unlawfully to employ The Broadmoor Marks.

58. J. Crew's unlawful acts have caused and will continue to cause irreparable injury to Broadmoor for which Broadmoor has no adequate remedy at law.

## COUNT III:
## UNFAIR COMPETITION
## IN VIOLATION OF COLORADO COMMON LAW

59. Broadmoor incorporates the allegations in paragraphs 1 through 58 into Count III.

60. The Broadmoor Marks include common law rights under Colorado state law.

61. The Broadmoor Marks have achieved secondary meaning and significance through their continuous and longstanding use by Broadmoor in connection with the marketing and sale of Broadmoor's clothing and apparel as well as Broadmoor's resort services and outdoor-related identity, which are closely related and complementary to clothing and apparel.

62. Broadmoor has established goodwill associated with The Broadmoor Marks, and J. Crew is trading on Broadmoor's goodwill through its unauthorized and unlicensed use of The Broadmoor Marks.

63. J. Crew's use of the designation "Broadmoor" in connection with its quilted jackets and vests has caused and, unless restrained and enjoined, will continue to

cause a likelihood of confusion as to the origin and sponsorship of its quilted jackets and vests.

64. J. Crew's acts constitute infringement of Broadmoor's preexisting and longstanding rights in The Broadmoor Marks under Colorado state law.

65. J. Crew's unlawful acts of common law unfair competition have caused and, unless restrained and enjoined, will continue to cause irreparable injury to Broadmoor, for which Broadmoor has no adequate remedy at law.

## COUNT IV:
## TRADEMARK INFRINGMENT
## IN VIOLATION OF COLORADO COMMON LAW

66. Broadmoor incorporates the allegations in paragraphs 1 through 65 into Count IV.

67. Broadmoor is the owner of common law rights in and to The Broadmoor Marks. The Broadmoor Marks have achieved secondary meaning and significance through their continuous and longstanding use by Broadmoor in connection with the marketing and sale of Broadmoor's clothing and apparel as well as Broadmoor's resort services and outdoor-related identity, which are closely related and complementary to clothing and apparel.

68. The Broadmoor Marks are not functional and have acquired distinctiveness.

\\DE - 019341/000001 - 756560 v12

69. Broadmoor has established goodwill associated with The Broadmoor Marks, and J. Crew is trading upon Broadmoor's goodwill through its unauthorized and unlicensed use of The Broadmoor Marks.

70. J. Crew's intentional, unauthorized use of the designation "Broadmoor" in ways that are identical or confusingly similar to The Broadmoor Marks in connection with the sale, offering for sale, distribution, or advertising of J. Crew's clothing in commerce is likely to cause consumer confusion, or to cause mistake, or to deceive, in violation of Colorado common law.

71. By refusing to discontinue its use of designation "Broadmoor" that is identical or confusingly similar to The Broadmoor Marks, J. Crew has willfully, deliberately, maliciously, intentionally, knowingly, and in bad faith violated—and continues to violate—Broadmoor's common law rights.

72. As a result of J. Crew's acts, J. Crew has caused, and will continue to cause, irreparable harm to Broadmoor and to the goodwill associated with The Broadmoor Marks, for which Broadmoor has no adequate remedy at law. Consequently, Broadmoor is entitled to injunctive and other relief.

## COUNT V:
## DECEPTIVE BUSINESS PRACTICES
## IN VIOLATION OF C.R.S. § 6-1-105

73. Broadmoor incorporates the allegations in paragraphs 1 through 72 into Count V.

74. Broadmoor is the owner of common law rights in and to The Broadmoor Marks. The Broadmoor Marks have achieved secondary meaning and significance

through their continuous and longstanding use by Broadmoor in connection with the marketing and sale of Broadmoor's clothing and apparel as well as Broadmoor's resort services and outdoor-related identity, which are closely related and complementary to clothing and apparel.

75. The Broadmoor Marks are not functional and have acquired distinctiveness.

76. Broadmoor has established goodwill associated with The Broadmoor Marks and J. Crew is trading upon Broadmoor's goodwill through unauthorized and unlicensed use of The Broadmoor Marks.

77. In the course of J. Crew's business, J. Crew has used deceptive representations in connection with its goods by using the designation "Broadmoor" in connection with the sale of J. Crew clothing, which is identical or confusingly similar to The Broadmoor Marks.

78. J. Crew is knowingly making false representations as to the source, sponsorship, approval, or certification of goods through its unauthorized use of the designation "Broadmoor" in connection with the sale of J. Crew clothing which is identical or confusingly similar to The Broadmoor Marks. Further, J. Crew is knowingly making a false representation as to affiliation, connection, association with, or certification by Broadmoor through its unauthorized use of the designation "Broadmoor" in connection with the sale of J. Crew clothing which is identical or confusingly similar to The Broadmoor Marks.

15

79. J. Crew is using the designation "Broadmoor" which is identical or confusingly similar to The Broadmoor Marks in connection with, among other things, the promotion and sale of products without Broadmoor's authorization.

80. The public and relevant consumers associate The Broadmoor Marks with Broadmoor and its marketing and sale of Broadmoor clothing and apparel as well as Broadmoor's resort services and outdoor-related identity, which are closely related and complementary to clothing and apparel.

81. J. Crew's unauthorized use of the designation "Broadmoor" which is identical or confusingly similar to The Broadmoor Marks falsely signals to the public as actual or potential consumers of J. Crew's goods that Broadmoor has approved the sale of those goods in connection with The Broadmoor Marks, which Broadmoor has not.

82. J. Crew's intentional and willful actions set forth above constitute unlawful and deceptive business practices under C.R.S. § 6-1-105.

83. J. Crew's actions have caused and will continue to cause irreparable injury to Broadmoor and have resulted and will continue to result in unjust enrichment to J. Crew unless J. Crew is enjoined by this Court from further violations of Broadmoor's rights.

84. As a result of J. Crews actions, J. Crew has caused, and will continue to cause, irreparable harm to Broadmoor and to the goodwill associated with The Broadmoor Marks, for which Broadmoor has no adequate remedy at law. Thus, Broadmoor is entitled to injunctive and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Broadmoor respectfully requests that the Court:

(A)   find that J. Crew has used in commerce a reproduction, counterfeit, copy, and colorable imitation of Broadmoor's Registered Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, and that Broadmoor has suffered damages caused by such use;

(B)   find that J. Crew has used in commerce a word and name in connection with goods that is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of J. Crew with Broadmoor, or as to the origin, sponsorship, or approval of J. Crew's goods, services, and commercial activities by Broadmoor, and that Broadmoor is likely to suffer and has suffered damages caused by such use;

(C)   find that J. Crew has infringed Broadmoor's common law trademark rights and that Broadmoor has been damaged by J. Crew's infringement;

(D)   find that J. Crew has engaged in common law unfair competition and that Broadmoor has been damaged by J. Crew's actions;

(E)   find that J. Crew has engaged in deceptive trade practices in violation of C.R.S. § 6-1-105 and that Broadmoor has been damaged by J. Crew's actions;

(F)   grant a preliminary injunction against J. Crew (including all of its agents, employees, officers, successors, and assigns, as well as all those acting in concert with them) requiring that J. Crew discontinue the display or other infringing use of the

17

designation "Broadmoor" or any other word or mark that violates Broadmoor's trademarks rights;

(G) grant a permanent injunction against J. Crew (including all of its agents, employees, officers, successors, and assigns, as well as all those acting in concert with them) requiring that J. Crew permanently refrain from the display or other infringing use of the word "Broadmoor" or any other word or mark that violates Broadmoor's trademarks rights;

(H) order an accounting and an award to Broadmoor of such monetary relief to which it is or may become entitled, including J. Crew's profits earned under the Broadmoor designation, Broadmoor's damages, the costs of this action and reasonable attorney's fees, including any pre- and post-judgment interest;

(I) order that all tangible items (including labels, signs, prints, packages, wrappers, receptacles, and advertisements) in the possession J. Crew that bear the designation "Broadmoor" or any reproduction, counterfeit, copy, or colorable imitation of The Broadmoor Marks be delivered up and destroyed; and

(J) award Broadmoor any other relief that the Court finds just and appropriate.

Broadmoor reserves its right pursuant to 35 U.S.C. § 1117(c) to elect to recover statutory damages instead of actual damages and profits.

**JURY DEMAND**

Broadmoor demands a jury trial on all issues so triable in this action.

Respectfully submitted this 19th day of December, 2014.

        HOGAN LOVELLS US LLP

        /s/ John W. Cook
        John W. Cook
        Two North Cascade Avenue
        Suite 1300
        Colorado Springs, Colorado 80903
        719.448.5900
        719.448.5922 (fax)
        john.cook@hoganlovells.com

        Raymond A. Kurz, *application for admission to bar of this District forthcoming*
        Columbia Square
        555 Thirteenth Street, NW
        Washington, District of Columbia  20004
        202.637.5683
        202.637.5910
        raymond.kurz@hoganlovells.com

        David A. DeMarco
        One Tabor Center
        1200 Seventeenth Street, Suite 1500
        Denver, Colorado 80202
        303.899.7300
        303.899.7333 (fax)
        david.demarco@hoganlovells.com

        *ATTORNEYS FOR PLAINTIFF BROADMOOR HOTEL, INC.*